# UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI WESTERN DIVISION

| | |
|---|---|
| ALPHONSE D. JACKSON, ) | |
| ) | |
| Petitioner, ) | |
| ) | Case No. 15-0997-CV-W-FJG-P |
| vs. ) | |
| ) | |
| RONDA PASH, ) | |
| ) | |
| Respondent. ) | |

## OPINION AND ORDER DENYING PETITION FOR HABEAS CORPUS AND DENYING THE ISSUANCE OF A CERTIFICATE OF APPEALABILITY

Petitioner, a convicted state prisoner currently confined at the Crossroads Correctional Center in Cameron, Missouri, has filed *pro se* this federal petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2009 convictions and sentences for statutory rape, forcible rape, statutory sodomy, and forcible sodomy, which were entered in the Circuit Court of Jackson County, Missouri. Petitioner's motion for post-conviction relief filed pursuant to Mo. Sup. Ct. R. 29.15 was denied after an evidentiary hearing (Doc. 15-6, pp. 46-56) and that denial was affirmed on appeal therefrom (Doc. 15-10).

### Statement of Facts

In affirming the denial of post-conviction relief, the Missouri Court of Appeals, Western District, set forth the following facts:

> In early 2007, T.M. ("Mother") lived in a homeless shelter with her twelve-year-old daughter, S.B. ("Victim"), and another younger daughter. Mother befriended a fellow guest of the homeless shelter, a woman named Heidi, and Heidi invited Mother and her daughters to move in with her when Heidi left the shelter and moved into a Kansas City apartment complex. They lived with Heidi for a short time and moved several times during 2007-2008.
>
> In May of 2008, Victim, who was then thirteen years old, reported to Mother that, when she had been twelve, she was raped by Jackson, who was

Mother's former boyfriend After Victim reported the incident to Mother, Mother contacted a friend of hers who was a child abuse investigator with the Division of Family Services. The investigator "hotlined" the incident for Mother and interviewed Victim. Victim told the investigator that she had been raped in either February or March of 2007. A few weeks later, Victim was interviewed on video at the Child Protection Center; this interview was played for the jury at Jackson's trial.

At the trial, Victim testified that when she was twelve years old, she lived with Mother, her six-year-old sister, and Jackson at the apartment of Mother's friend Heidi. Victim testified that she only lived there a short time, in February or March of 2007. On the day of the rape, Mother and Heidi had taken Victim and her sister to a "water park" where they could play in the fountains. Afterward, they hung out in the courtyard in front of the apartment complex. Mother asked Victim to go get her a glass of water, so Victim went inside the apartment.

Jackson was in the apartment sitting on the couch. Jackson asked Victim to sit by him on the couch, and he kissed her on the mouth. Victim pulled away, but Jackson pulled her back to the couch and tried to kiss her again. Victim screamed, and Jackson put his hand over her mouth. Jackson then pulled Victim into a bedroom, unzipped his pants, exposed his penis, and told Victim to perform oral sex on him. Victim refused and started to cry. Jackson zipped his pants, unlocked the door, and checked to see if anyone was inside the apartment.

Jackson then pulled Victim into a bathroom, locked the door, removed his clothes, and took Victim's clothes off. He pushed Victim to the floor and pinned her down. Jackson put his tongue in Victim's mouth, then put his mouth on her vagina, then put his penis in her vagina. Victim tried to move and scream, but Jackson put his hand on her mouth and hit her one time in the face. Victim tried to resist. After the rape, Victim showered, changed clothes, and went back outside. Victim testified that Jackson had threatened her that if she told anyone what had happened, Jackson would do the same thing to her sister and would kill her and Mother. Victim was scared because she had seen Jackson become violent with Mother in the past.

Jackson did not testify in his defense, and, after nine hours of deliberation, the jury found him guilty of all four counts. The court sentenced Jackson to twenty years in prison. Jackson's convictions and sentences were affirmed on direct appeal. *State v. Jackson*, 349 S.W.3d 450 (Mo. App. W.D. 2011).

Doc. 15-10, pp. 3-5.

Before the state court findings may be set aside, a federal court must conclude that the state court's findings of fact lack even fair support in the record. *Marshall v. Lonberger*, 459

U.S. 422, 432 (1983). Credibility determinations are left for the state court to decide. *Graham v. Solem*, 728 F.2d 1533, 1540 (8th Cir. en banc), *cert. denied*, 469 U.S. 842 (1984). It is Petitioner's burden to establish by clear and convincing evidence that the state court findings are erroneous. 28 U.S.C. § 2254(e)(1).[1] Because the state court's findings of fact have fair support in the record and because Petitioner has failed to establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

## Discussion

Petitioner raises one ground for relief, wherein he argues that trial counsel was ineffective for failing to establish that Petitioner had an alibi for the spring of 2007, in that he was incarcerated during February and March 2007. Doc. 4, p. 5. Respondent contends that Ground 1 is without merit. Doc. 12.

In order for Petitioner to successfully assert a claim for ineffective assistance of counsel, Petitioner must demonstrate that his attorney's performance "fell below an objective standard of reasonableness" and that "the deficient performance" actually prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). "A court considering a claim of ineffective assistance of counsel must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 689). Petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.

To satisfy the prejudice prong, Petitioner must show that there is a reasonable probability

---

[1] In a proceeding instituted by an application for writ of habeas corpus by a person in custody pursuant to a judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

3

that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Id.* at 694. This Court, moreover, may not grant habeas relief unless the state appellate court's decision "was contrary to, or an unreasonable application of, the standard articulated by the [United States] Supreme Court in *Strickland*." *Owens v. Dormire*, 198 F.3d 679, 681 (8th Cir. 1999), *cert. denied*, 530 U.S. 1265 (2000).

The Missouri Court of Appeals, Western District, set forth the *Strickland* standard and denied Ground 1 as follows:

> "An alibi is a defense that places the defendant at the relevant time in a different place than the scene involved and so removed therefrom as to render it *impossible* for defendant to be the guilty party." *Wren v. State*, 313 S.W.3d 211, 218 (Mo. App. E.D. 2010) (internal quotation omitted). Victim claimed that the rape and sodomy occurred during February or March of 2007, and the initial complaint alleged that the rape and sodomy occurred on March 15, 2007. Jackson was incarcerated from the fall of 2006 until June of 2007, and Counsel had obtained letters of incarceration from the various correctional facilities to establish this fact. Therefore, Counsel believed before trial that he would be able to present Jackson's alibi for the time of the alleged rape and sodomy.
>
> But, as Counsel testified at the motion hearing, as he was preparing for trial, and he deposed Victim, Counsel was unable to pin Victim down to a March date to his satisfaction. Victim had stated that the attack had occurred after she and her family had returned from a "water park" in the middle of the day, which indicated to Counsel that Victim was talking about the summer months, during which Jackson was not incarcerated, even though she had said it was February or March. Counsel questioned Victim further, and she stated that the trees were not bare, but in full bloom. Also, there were other witness statements that indicated that perhaps Victim was mistaken about the date. And Counsel knew that "the State's witnesses and the Child Protection Center workers would try to explain to the jury that kids are often mistaken about dates." In sum, Counsel did not believe that Jackson had a viable alibi defense, and he "didn't want to volunteer to the jury that [Jackson] had a lengthy period of incarceration immediately preceding [the time of the alleged attack]." Counsel testified that his decision was a matter of trial strategy. Because the alibi was not strong, and because it was reasonable for Counsel not to want the jury to know that Jackson had been previously incarcerated, Counsel's failure to present the "alibi" evidence did not constitute deficient performance. *See Mallow*, 439 S.W.3d at 769. The motion court's finding that Counsel was not constitutionally ineffective is not clearly erroneous.

Doc. 15-10, pp. 8-9.

In holding that Petitioner's claims of ineffective assistance of trial counsel did not merit post-conviction relief, the state appellate court identified and applied reasonably the *Strickland* standard. *Id*. Petitioner fails to establish that it was unreasonable for the state appellate court to find that trial counsel's decision to not raise an alibi defense was a matter of trial strategy. "[C]ourts must resist the temptation to second-guess a lawyer's trial strategy; the lawyer makes choices based on the law as it appears at the time, the facts as disclosed . . . and his best judgment as to the attitudes and sympathies of judge and jury." *Blackmon v. White*, 825 F.2d 1263, 1265 (8th Cir. 1987); s*ee also Shaw v. U.S.*, 24 F.3d 1040, 1042 (8th Cir. 1994) (trial counsel's reasonable trial strategies cannot constitute ineffective assistance, even if they are unsuccessful); *Henderson v. Norris*, 118 F.3d 1283, 1287-88 (8th Cir. 1997) (matters of trial strategy presumed correct), *cert*. *denied*, 522 U.S. 1129 (1998).

Because the state courts' determinations as to Ground 1 did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *see* 28 U.S.C. §2254(d)(1) and (2), Ground 1 will be denied.

**Certificate of Appealability**

Under 28 U.S.C. § 2253(c), the Court may issue a certificate of appealability only "where a petitioner has made a substantial showing of the denial of a constitutional right." To satisfy this standard, Petitioner must show that a "reasonable jurist" would find the district court ruling on the constitutional claim(s) "debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 276

(2004). Because Petitioner has not met this standard, a certificate of appealability will be denied. See 28 U.S.C. § 2254, Rule 11(a).

Accordingly, it is **ORDERED** that:

(1) the petition for writ of habeas corpus is denied;

(2) the issuance of a certificate of appealability is denied; and

(3) this case is dismissed with prejudice.

/s/ Fernando J. Gaitan, Jr.
FERNANDO J. GAITAN, JR.
UNITED STATES DISTRICT JUDGE

Kansas City, Missouri,

Dated: May 24, 2016 .